**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GARY G. ELTON, an individual, and | § | |
| D. WILLIAM FOSTER, an individual, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-11-CV-00559-XR |
| | § | |
| DOUGLAS A. MCCLAIN, SR., an | § | |
| individual, DEBRA A. MCCLAIN, an | § | |
| individual, IMMUNOSYN | § | |
| CORPORATION, JAMES T. MICELI, an | § | |
| individual, DOUGLAS A. MCCLAIN, JR., | | |
| an individual, and PADMORE HOLDINGS, | | |
| LTD. | | |
| | | |
| *Defendants*. | | |

## I. Order

Before the Court is Plaintiffs' Gary G. Elton and D. William Foster's motion for default

judgment.  After due consideration of the relevant law, the Court GRANTS the motion and ENTERS

default judgment against Defendants DOUGLAS A. MCCLAIN, SR., DOUGLAS A. MCCLAIN,

JR., JAMES T. MICELI, IMMUNOSYN CORPORATION, PADMORE HOLDINGS, LTD, and

DEBRA A. MCCLAIN.

## II. Background

On July 8, 2011, Gary G. Elton and D. William Foster brought an action against Immunosyn

Corporation, James T. Miceli, Douglas A. McClain, Sr., Douglas A. McClain, Jr., Debra McClain,

and Padmore Holdings, Ltd. ("Defendants") for claims arising out of Defendants' actions regarding

1

Immunosyn Corporation ("Immunosyn") stock.[1]  Plaintiff Gary G. Elton ("Elton") alleges that, while receiving lymphoma treatment at a clinic in Texas, Defendant Douglas A. McClain, Sr. ("McClain, Sr.") made misrepresentations to Plaintiff concerning a new drug being marketed by Immunosyn.[2] Based on this information, Plaintiff subsequently purchased stock in the corporation, but McClain, Sr. never delivered the said stock.  As a result, Elton claims to have suffered a loss of $10,000.[3]

Plaintiff D. William Foster ("Foster") also complains that misrepresentations were made to him concerning Immunosyn stock.  According to Foster, he was informed that he could purchase shares at a low price prior to the shares going public, and once publicly traded, he could re-sell the shares at a higher price.[4]  However, Foster states that he did not receive his shares prior to the corporation going public, nor was he able to sell the stock as represented to him.[5]

When the Immunosyn stock opened, it traded as high as six dollars ($6) per share, but now it is virtually worthless.[6]  Thus, Plaintiff Foster maintains that he was unable to profit on the sale of Immunosyn stock on the open market as promised to him by the Defendants.[7]  At the same time, Plaintiff posits that Defendants greatly profited themselves from sale of the stock, giving rise to

_____

[1]Plaintiffs' Complaint, p. 1.

[2]Plaintiffs' First Amended Complaint, ¶¶ 58-59 (hereafter "First Amended Complaint").

[3]*Id.* at ¶¶ 60-61; Elton's Aff. ¶ 2, Aug. 16, 2011.

[4]First Amended Complaint, ¶ 66.

[5]First Amended Complaint, ¶¶ 67-81; Foster's Aff. ¶¶ 2-9, Aug. 16, 2011.

[6]Tine's Aff. ¶¶ 3-4, Aug. 16, 2011.

[7]First Amended Complaint, ¶¶ 75-76.

Plaintiffs' cause of action.[8]

Specifically, Plaintiffs bring claims based on securities fraud, RICO violations, common law fraud, breach of contract, and conspiracy against Defendants McClain, Sr. and Immunosyn.[9]  As to Defendants James T. Miceli ("Miceli"), Douglas A. McClain, Jr. ("McClain, Jr."), and Padmore Holdings, Ltd. (Padmore), Plaintiffs advance RICO and conspiracy charges[10], and Plaintiffs further assert claims under the Uniform Fraudulent Transfer Act against Debra A. McClain ("Debra").[11]

Furthermore, because Defendants have failed to respond to Plaintiffs' complaints against them, Plaintiffs assert that they are entitled to a final order for default judgment against Defendants, as well as corresponding damages and equitable relief.[12]  With respect to such damages, Foster seeks a recovery for out-of-pocket losses of $50,000, plus lost profits of $950,000, while Elton requests $10,000 compensation for out-of-pocket losses, trebled to $30,000.  In addition, Plaintiffs ask for attorney's fees and costs in the amount of $2,350.[13]

### III. Legal Standard

Pursuant to FED. R. CIV. P. 55(a), a default judgment is proper "[w]hen a party against whom

---

[8] *Id.* at ¶ 49; Tine's Aff. ¶ 2 (referring to attached Exhibit A).

[9] First Amended Complaint, ¶¶ 9, 114, 119, 144; *see also* Plaintiffs' Motion for Entry of Final Judgment Against Defendants and Incorporated Memorandum of Law, p. 3 (hereafter "Motion for Entry of Final Judgment").

[10] First Amended Complaint, ¶¶ 132, 135-36, 144; *see also* Motion for Entry of Final Judgment, p. 3.

[11] First Amended Complaint, ¶ 154; *see also* Motion for Entry of Final Judgment, p. 3.

[12] Motion for Entry of Final Judgment, p. 2-3.

[13] *Id.* at 5.

a judgment for affirmative relief is sought has failed to plead or otherwise defend."[14]  However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages.  The Court examines each in turn.

## IV. Analysis

### A. Jurisdiction

When a party is seeking entry of default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."[15]  Federal courts have subject matter jurisdiction over any civil actions that involve a question of federal law, or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.[16]  For purposes of determining diversity of citizenship, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."[17]

In this case, the original action was brought in federal court by the Plaintiffs pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78t, and the RICO statute 18 U.S.C. § 1964 *et seq*.[18]

---

[14] FED. R. CIV. P. 55(a).

[15] *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

[16] 28 U.S.C. §§ 1331, 1332.

[17] 28 U.S.C. § 1332(c)(1).

[18] First Amended Complaint, ¶ 9.  *See* 28 U.S.C. §§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Thus, Plaintiffs assert claims involving federal questions against all named Defendants in the case.[19]

Though not necessary, the parties also are diverse,[20] and the amount in controversy claimed by

Plaintiff Foster exceeds $75,000.[21]   Therefore, this Court has subject matter jurisdiction over the

cause of action brought by Plaintiffs.

With regard to personal jurisdiction, a  federal court "may assert jurisdiction if (1) the state's

long-arm statute applies . . . and (2) if due process is satisfied."[22]   In Texas, the long-arm statute

permits the exercise of jurisdiction over a nonresident to the full extent compatible with federal

mandates of due process.[23]   Thus, personal jurisdiction is proper when two requirements are met.

"First, the nonresident defendant must have 'purposefully availed himself of the benefits and

protections of the forum state by establishing minimum contacts with that forum state.'"[24]   To

establish "minimum contacts," it is sufficient to show that the defendant has contacts giving rise to

---

[19]First Amended Complaint, ¶ 9.  Plaintiffs also allege common law causes of action
against Defendants.  A district court has supplemental jurisdiction over "claims that are so
related to claims in the action within . . . original jurisdiction that they form part of the same case
or controversy."  28 U.S.C. § 1367(a).

[20]*See* First Amended Complaint, ¶¶ 1-8 (stating where parties to the suit reside).

[21]*Id.* at ¶¶ 102, 114, 121, 132, 139 (requesting lost profits of over $75,000); *see* Motion
for Entry of Default Judgment, p. 5 (Foster claims total damages of over $75,000); *see also* 28
U.S.C. §§ 1332 (providing the diversity and amount in controversy requisites for a district court
to have original jurisdiction over a civil action in the absence of a federal question).

[22]*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting
*Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)).

[23]*Id.* (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993);
*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

[24]*Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 323 (5th Cir. 1996) (quoting
*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

either specific or personal jurisdiction.[25]  "Specific jurisdiction is appropriate when the nonresident

defendant's contacts with the forum state arise from, or are directly related to, the cause of action."[26]

On the other hand, general jurisdiction is proper "even if the . . . contacts with the forum state are

not directly related to the cause of action, [as long as] the defendant's contacts with the forum state

are both 'continuous and systematic.'"[27]

However, the second requirement is that "the exercise of jurisdiction over the nonresident

defendant must not 'offend traditional notions of fair play and substantial justice.'"[28]  In making such

a determination of "fairness," courts "consider (1) the burden upon the nonresident defendant; (2)

the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial

system's interest in obtaining the most efficient resolution to controversies; and (5) the shared

interest of the several States in furthering fundamental substantive social policies."[29]

To support their argument that this Court has personal jurisdiction over the Defendants,

Plaintiffs submitted a supplemental memoranda to their motion for entry of final judgment.[30]  As

Plaintiffs correctly note, it is clear that this Court has personal jurisdiction over Defendants Douglass

---

[25]*Id.* (quoting *Wilson*, 20 F.3d at 647).

[26]*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)).

[27]*Id.* (citing *Helicopteros*, 466 U.S. at 414 n.9).

[28]*Felch*, 92 F.3d at 323 (quoting *Wilson*, 20 F.3d at 647).

[29]*Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

[30]Plaintiffs' Supplemental Memorandum in Support of Their Motion for Entry of Final Judgment on the Issue of Personal Jurisdiction (hereafter "Supplemental Memorandum").

A. McClain, Sr. and Debra A. McClain because both individuals are residents of Boerne, Texas, the location where service was perfected on them.[31]  Plaintiffs then argue that the remaining nonresident Defendants have sufficient contacts with Texas for the Court to exercise personal jurisdiction over them.

With regard to the two nonresident Defendants that are not natural persons, Immunosyn Corporation and Padmore Holdings, Ltd., Plaintiffs posit that personal jurisdiction is proper because the entities have sufficient contacts with the State.[32]  As evidence that Immunosyn is subject to personal jurisdiction, Plaintiffs point to the fact that the corporation was conducting business in Texas and selling stock through its agents.[33]  Viewing the facts as plead by Plaintiffs, there can be no doubt that Immunosyn's contacts with Texas are directly related to the cause of action asserted in this case.[34]  Defendant McClain, Sr., as the owner/and or controlling person of Immunosyn,[35] not only had direct communications with Texas residents that gave rise to the causes of action,[36] but he

---

[31]First Amended Complaint, ¶¶ 5, 7; *see* Supplemental Memorandum, p. 6.

[32]*Id.* at 6-7.

[33]First Amended Complaint, ¶¶ 4-6, 16, 56-62; *see* Supplemental Memorandum, p. 7.

[34]When personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has jurisdiction over a nonresident defendant.  "'[W]hen the jurisdictional issue is to be decided by the court on the basis of facts contained in affidavits, a party need only present facts sufficient to constitute a *prima facie* case of personal jurisdiction.'" *McNamara v. Bre-X Minerals, Ltd.*, 46 F. Supp. 2d 628, 632 (E.D. Tex. 1999) (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).  Furthermore, "'uncontroverted allegations in the [p]laintiff's complaint must be taken as true.'" *Id.*

[35]First Amended Complaint, ¶ 5; *see* Supplemental Memorandum, pp. 2, 4.

[36]First Amended Complaint, ¶¶ 57-62; *see* Supplemental Memorandum, pp. 4-5; *see also Global 360, Inc. v. Spittin' Images Software, Inc.*, 2005 WL 625493, at *5, (N.D. Tex. Mar. 17, 2005) (holding that defendant corporation's "contacts with Texas consumers by telephone, e-mail and facsimile regarding" the subject of the complaint , and the president's visit to the

specifically solicited business in the state by making presentations at Texas clinics on at least two

separate occasions.[37]   Furthermore, Plaintiffs allege that these representations were fraudulent.

"When the actual content of communications with a forum gives rise to intentional tort causes of

action, this alone constitutes purposeful availment.  The [d]efendant is purposefully availing himself

of 'the privilege of causing a consequence' in Texas."[38]   Thus, it is clear that Immunosyn had

minimum contacts with the state of Texas, and consequently, this Court has specific jurisdiction over

the corporation.

Moreover, the same facts also evidence that the exercise of jurisdiction over Immunosyn

would "not offend traditional notions of fair play and substantial justice."[39]   To begin with, it would

---

plaintiff's office to discuss the source of the action, were "sufficient minimum contacts for [the] court to exercise specific jurisdiction").

[37]   The Fifth Circuit has found that a nonresident defendant did not have sufficient contacts with the forum state when the defendant did not reach out to the plaintiff in Texas for business, communication was conducted via telephone or mail, and the Defendant did not maintain an office, agent, or place of business in Texas.  *Loumar, Inc. v. Smith*, 698 F.2d 759, 763 (5th Cir. 1983).  Here, however, Defendant specifically solicited business from Texas residents, the communication was by in-person contact within the forum state, and the corporation's owner and agent, McClain, Sr., resides in Texas.  First Amended Complaint, ¶¶ 5, 57-62; *see* Supplemental Memorandum, pp. 2, 4.   In addition, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001).  In the present case, McClain, Sr. made at least two fraudulent presentations to Texas consumers that gave rise to the causes of action brought by Plaintiffs.  First Amended Complaint, ¶¶ 5, 57-62; *see* Supplemental Memorandum, p. 4.

[38]*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n.*, 875 F.2d 1212 (6th Cir. 1989)); *see Evercom Sys., Inc. v. Mannis*, 2004 WL 396885, at * 2 (N.D. Tex. Feb. 20, 2004) (finding that plaintiff's allegations of misrepresentations made by defendant, "if true, would give rise to intentional torts, which are sufficient to be characterized as a purposeful availment of the privilege of conducting activities in Texas").

[39]*See Wilson*, 20 F.3d at 647 (providing the second requirement for proper personal jurisdiction over a nonresident defendant).

not impose an undue burden on Defendant[40] – the owner and/or controlling person of the corporation is a resident of the State; and Defendant has conducted business in Texas, specifically soliciting Texas residents to buy shares of the corporation.[41]  In addition, the State has an interest in protecting its citizens from fraudulent misrepresentations, and Plaintiffs have an interest in securing the relief owed them.[42]

Plaintiffs also allege that, as part of the same fraudulent scheme perpetrated upon Plaintiffs, shares of Immunosyn stock were gifted and sold through Padmore Holdings to numerous Texas residents.  They further claim that this was done to avoid taxes and insider trading disclosures.[43] Although Padmore is a foreign entity, the company has a registered agent in the state of Texas.[44]  "If an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, . . . there is no unfairness in subjecting that corporation to the jurisdictions of the courts of that state. . . ."[45]

These activities that require a corporation to designate a statutory agent serve as helpful, but

_____

[40]*See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (stating that the burden upon the nonresident defendant is a factor to consider in determining fairness).

[41]First Amended Complaint, ¶¶ 5, 57-65; *see* Supplemental Memorandum, pp. 2, 5.

[42]*See Asahi Metal Indus. Co.*, 480 U.S. at 113 (considering the interests of the forum state and the plaintiff's interest in securing relief in making a determination of the fairness of exercising personal jurisdiction over a nonresident defendant).

[43]First Amended Complaint, ¶ 16; *see* Supplemental Memorandum, p. 7.

[44]Per its SEC filings, J. Ken Nunley, Esq. of Texas, is an agent of Padmore Holdings, Ltd. First Amended Complaint, ¶ 14; *see* Supplemental Memorandum, p. 3.

[45]*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 444 (1952).

not conclusive evidence of minimum contacts with the forum.[46]  In the case at hand, not only does Padmore have an agent in the State, but it also maintains an office[47] and employs an additional agent in Texas, who is a director of Padmore and likely the accountant as well.[48]  Furthermore, the owners of the company have had substantial business contacts with the State in the form of sales and gifts of stock owned by the company.[49]  It is likely that these contacts with the forum are directly related to the cause of action, rendering the exercise of specific jurisdiction appropriate.[50]

However, Padmore's continuous and systematic contacts with Texas are also sufficient to establish general jurisdiction – the company has both owners and directors residing in the State, it maintains a Texas office, it employs Texas residents, and stock was transferred on its behalf within the forum to Texas residents. [51]  These are the types of "continuous and systematic corporate activities . . . [that] are enough to make it fair and reasonable to subject [the company] to proceedings

---

[46]*Id.*

[47]First Amended Complaint, ¶¶ 8, 14; *see* Supplemental Memorandum, p. 2.

[48]First Amended Complaint, ¶ 14; *see* Supplemental Memorandum, p. 3. "A nonresident does business in this state if the nonresident . . . recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this State." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (2010).

[49]First Amended Complaint, ¶ 16; *see* Supplemental Memorandum, p. 3. Defendant Miceli is a 45% owner of Padmore; Defendant McClain, Jr. is a 45% owner of Padmore; and Defendant McClain, Sr. is a 10% owner of Padmore.  First Amended Complaint, ¶ 15.

[50]*See Wilson*, 20 F.3d at 647 (clarifying when a nonresident defendant is subject to the specific jurisdiction of a court).

[51]*See Perkins*, 342 U.S. at  445 (finding that the presence of an agent in the state, coupled with other corporate activities such as directors' meetings, business correspondence, stock transfers, payments of salaries, and purchases of property constituted sufficient contacts with the forum to exercise personal jurisdiction over a nonresident defendant).

in personam in [the] [S]tate."[52]   Moreover, though Defendant is a foreign entity, its continuing

presence in the State precludes the exercise of jurisdiction over Defendant from offending

"traditional notions of fair play and substantial justice."[53]  The State also has an interest in protecting

its residents, some of whom were harmed by Defendant's conduct in the State.[54]

    With respect to the two nonresident individuals named as Defendants, James T. Miceli and

Douglas A. McClain, Jr.,  Plaintiffs maintain that the Defendants' contacts with the forum are

sufficient to establish both general and specific jurisdiction.[55]  According to Plaintiffs, this Court has

general jurisdiction over Defendants due to their continuous and systematic contacts with Texas over

the last ten years, consisting of both business and personal dealings.[56]  For a district court to properly

exercise general jurisdiction, the defendant's contacts with the forum must "occur with such

frequency that the contacts in general are 'continuous and systematic.'"[57]  Though there is no

requirement that the contacts be directly related to the cause of action, it is nonetheless necessary that

the unrelated contacts be "substantial."[58]  The court can make this determination by "evaluating [the]

---

[52]*Id.*

[53]*See Wilson*, 20 F.3d at 647 (providing the second requirement for proper personal jurisdiction over a nonresident defendant).

[54]*See Asahi Metal Indus. Co.*, 480 U.S. at 113 (considering the interests of the forum state in making a determination of the fairness of exercising personal jurisdiction over a nonresident defendant).

[55]Supplemental Memorandum, pp. 7-10.

[56]First Amended Complaint, ¶¶ 11-22, 40-43; *see* Supplemental Motion, p. 8.

[57]*Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986)).

[58]*Wilson*, 20 F.3d at 650 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772 (1984)).

contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."[59]

The facts as supplied by Plaintiffs indicate that Defendants' contacts with the State are very similar to those of the nonresident defendant in *Holt Oil & Gas Corp. v. Harvey*,[60] in which the Fifth Circuit held that an examination of the contacts "in toto" revealed "the kind of continuous and systematic contacts required to satisfy due process."[61] To begin with, Defendants have conducted a great deal of business in Texas.[62]  Defendants are the sole officers and owners of Argyll Equities, LLC, an entity that maintained an office in Texas.[63]  Through this company, Defendants provided loans secured by stock to Texas residents, who subsequently sued Argyll Equities and Defendant Miceli for fraud committed within the State.  A Texas court ultimately entered judgment against the entity and both Defendants.[64]

Furthermore, Defendants also were officers and owners of Argyll Biotechnologies, LLC,

---

[59]*Id.* (citing *Metro. Life. Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996)).

[60]801 F.2d 773, (5th Cir. 1986).

[61]*Id.* at 779.

[62]First Amended Complaint, ¶¶ 10-23; *see* Supplemental Memorandum, p. 8; *see also Holt Oil & Gas Corp.*, 801 F.2d at 779 (noting that defendant had "transacted a great deal of business in Texas").

[63]First Amended Complaint, ¶¶ 10-11; *see* Supplemental Memorandum, pp. 2, 8; *see also Holt Oil & Gas Corp.*, 801 F.2d at 779 (acknowledging that nonresident defendant was the sole shareholder of a company conducting business in Texas).

[64]First Amended Complaint, ¶¶ 20, 36-43; *see* Supplemental Memorandum, p. 8.  In *Holt Oil & Gas Corp.*, the nonresident defendant was the sole shareholder of a company that drilled several oil wells in Texas, and the company was also involved in litigation in Texas.  801 F.2d at 779.

through which they manufactured and distributed a drug within the State of Texas.[65]  As officers of

the company, Defendants employed at least two Texas residents: Defendant McClain, Sr. and Dr.

Erickson.[66]  Moreover, Defendants have retained the services of an attorney, J. Ken Nunley, to

conduct corporate legal matters, as well as the services of an accountant, Lynn Booker, both of

whom are residents of Texas.[67]  Under Texas law, "a nonresident does business in this state if the

nonresident . . . recruits Texas residents, directly or through an intermediary located in this state, for

employment inside or outside this State."[68]

In addition to Defendants' business related conducts, the Defendants also have benefitted

personally from the transfer of property to Texas.[69]  Plaintiffs claim that Miceli and McClain, Jr.

transferred numerous shares of stock owned by Padmore Holdings, Ltd. to residents of the State.[70]

In doing so, Defendants personally received money from the sale of said stock.[71]  Therefore, viewing

---

[65]First Amended Complaint, ¶¶ 12-13; *see* Supplemental Memorandum, p. 8; *see also Holt Oil & Gas Corp.*, 801 F.2d at 779 (commenting on nonresident defendant's additonal business dealings with a Texas record company, of which defendant served as a director and had invested money).

[66]First Amended Complaint, ¶¶ 12-13; *see* Supplemental Memorandum, p. 9.

[67]First Amended Complaint, ¶¶ 13-15; *see* Supplemental Memorandum, pp. 8-9.

[68]TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (2010); *see Kervin v. Red River Ski Area, Inc.*, 711 F. Supp. 1383, 1387 (E.D. Tex. 1989) (considering non-resident defendant's employment of a Texas resident as a factor in determining that court had general jurisdiction over defendant (citing TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (1986))).

[69]First Amended Complaint, ¶ 17; *see* Supplemental Memorandum, p. 9.

[70]First Amended Complaint, ¶ 16; *see* Supplemental Memorandum, p. 9; *see also Perkins*, 342 U.S. at 445-46 (noting that stock transfers are an activity to be considered in analyzing continuous and systematic contacts).

[71]First Amended Complaint, ¶ 17; *see* Supplemental Memorandum, p. 9; *see generally Advantage Investors Mortgage Corp. v. Robertson*, 2002 WL 1000924, at *6 (N.D. Tex. May 14, 2002) (finding significant that nonresident Defendant profited from brokering deals for Texas

8

the facts *in toto*, it is clear that Defendants' personal and business contacts with the State of Texas "constitute the kind of continuous and systematic contacts required to satisfy due process."[72] Because this Court finds that it has general jurisdiction over Miceli and McClain, Jr., it is not necessary to consider specific jurisdiction.

Given the Defendants' history of contacts with and presence in the State, the exercise of jurisdiction over them would not impose an unfair burden.[73]  Many of the individuals harmed by Defendants' actions were Texas residents, so the State has an interest and can provide an efficient resolution to the controversy.[74]  Thus, the adjudication of Plaintiffs' claims against Defendants Miceli and McClain, Jr. in a Texas court would not "offend traditional notions of fair play and substantial justice."[75]

### B. Claim Upon which Relief May be Granted

When a defendant fails to respond or otherwise defend, his default is considered an admission

---

residents)).

[72]*Holt Oil & Gas Corp.*, 801 F.2d at 779; *see Perkins*, 342 U.S. 437, 445-46 (1952) (acknowledging that "directors' meetings, business correspondence, banking, stock transfers, [and] payments of salaries" are the types of activities that "make it fair and reasonable to subject [a non-resident defendant] to proceedings in personam in that state"); *Langton v. Cbeyond Comm., L.L.C.*, 282 F. Supp. 2d 504, 509 (E.D. Tex. 2003) ("Conducting business in a forum, regularly directing salespersons into a forum, and soliciting business in a forum are continuous and systematic activities that support general jurisdiction." (citing *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295-96 (10th Cir. 1999))).

[73]*See Bullion*, 895 F.2d at 216 n.5 (5th Cir. 1990) (considering the burden upon the nonresident defendant for purposes of traditional notions of fair play and substantial justice (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987))).

[74]*See Id.*  (examining the interests of the forum state and the interstate judicial system's interest in obtaining the most efficient resolution to a controversy).

[75]*Id.*

of the plaintiff's well-pleaded allegations of fact related to liability.[76]  While such allegations are presumed to be true, "a defendant's default does not in itself warrant the court in entering a default judgment. [Rather, t]here must be a sufficient basis in the pleadings for the judgment entered."[77]  In other words, the court must determine whether the well-pleaded facts state a claim upon which relief may be granted.[78]  In sum, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action[,] and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."[79]

Due to Defendants' failure to respond to the claims against them, the facts plead by Plaintiffs are taken as true, but Plaintiffs' complaint must nonetheless contain substantive causes of action, as well as a sufficient basis for the relief sought.[80]  Plaintiffs allege claims under the Securities

---

[76]*Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[77]*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[78]"On appeal, the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment."  *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206 (citing *Ohio Central R.R. Co. v. Central Trust Co. of NY*, 114 U.S. 104 (1885)).  Furthermore, it is a defense to a claim for relief that  the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355, 2001 WL 422375, at *1-2 (5th Cir. Mar. 28, 2001) (affirming denial of plaintiff's request for default judgment for failure to state a claim upon which relief could be granted); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (holding that default judgment was improper on claims that were barred or subject to dismissal under Rule 12(b)(6)).

[79]*Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x. 860, 863 (11th Cir. 2007) (applying Texas law).

[80]*Tyco Fire & Sec.*, 218 Fed. App'x. at 863.

Exchange Act of 1934 against Defendants McClain, Sr. and Immunosyn.  As a form of relief,

Plaintiffs seek resulting out-of-pocket losses, which are the appropriate measure of damages for such

a claim.[81]  In addition, Plaintiffs further assert claims of common law fraud, breach of contract, and

RICO violations under 18 U.S.C. § 1964(c) against the same Defendants.  Accordingly, Plaintiff

Foster seeks recovery of lost profits, which are available under Texas law in breach of contract and

fraud actions.[82]  Alternatively, Plaintiff Elton seeks a trebling of his out-of-pocket losses, based on

Defendants' RICO violations, in lieu of lost profits.[83]

   Furthermore, Plaintiffs also bring conspiracy claims against the above named Defendants,

McClain, Sr. and Immunosyn, as well as Defendants McClain, Jr., Miceli, and Padmore.[84]  "[A] co-

conspirator is bound by the overt acts of other conspirators taken in furtherance of the conspiracy,

whether or not said co-conspirator was a member of the conspiracy at the time. . . ."[85]  Thus,

---

[81]*See James v. Nico Energy Corp.*, 838 F.2d 1365, 1371 (5th Cir. 1988) (noting that the general measure of damages for a defrauded buyer under Rule 10b-5 is out-of-pocket damages).

[82]*See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998) (acknowledging that in cases of common law fraud, "lost profits on the bargain may be recovered if such damages are proved with reasonable certainty"); *S.W. Battery Corp. v. Owen,* 115 S.W.2d 1097, 1098-99 (1938) (finding that recovery of lost profits in a breach of contract action is permissible when the "amount of loss [is] shown by competent evidence with reasonable certainty").

[83] "Any person injured in his business or property by reason of a violation of [the prohibition against racketeering activities] may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including reasonable attorney's fees, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish [such] a violation. . . ."  18 U.S.C. § 1964(c).

[84]Plaintiffs also assert RICO violations against Defendants McClain, Jr., Miceli, and Padmore.

[85]*In re Enron Corp. Sec., Derivatives & ERISA Litig.*, 623 F. Supp. 2d 798, 810 (quoting *U.S. v. Thomas*, 686 F. Supp. 1078, 1088 (M.D. Pa. 1988)).

Plaintiffs seek all of the aforementioned damages from Defendants McClain, Sr., Immunosyn,

McClain, Jr., Miceli, and Padmore collectively.  Therefore, Plaintiffs have alleged substantive causes

of action against the Defendants, upon which relief can be granted.

As to Defendant Debra A. McClain, Plaintiffs assert that Defendant received funds in

violation of the Uniform Fraudulent Transfer Act.[86]

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . .
> if the debtor made the transfer or incurred the obligation (1) with actual intent to
> hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a
> reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or transaction for which the
> remaining assets of the debtor were unreasonably small in relation to the business or
> transaction; or (B) intended to incur, or believed or reasonably should have believed
> that the debtor would incur, debts beyond the debtor's ability to pay as they became
> due.[87]

In support of this claim, Plaintiffs offer evidence that Defendant Debra McClain received a transfer

from McClain, Sr. of $10,000 into her bank account for no equivalent value in exchange, which

Plaintiffs claim was done to avoid creditors and future creditors.[88]

### C. Damages

When a court awards damages to a plaintiff in a default judgment case, the amount "must not

differ in kind from, or exceed in amount, what is demanded in the pleadings."[89]

Plaintiffs both seek out-of-pocket losses in an amount equal to the amount each individual

---

[86]First Amended Complaint, ¶¶ 148-56; *see* Motion for Entry of Final Judgment, p. 3.

[87]TEX. BUS. & COM. CODE ANN. § 24.005(a).

[88]First Amended Complaint, ¶¶ 148-56; Plaintiff's Supplemental Memorandum in
Support of Their Motion for Entry of Final Judgment in Response to this Court's Order Dated
October 31, 2011, p. 2.

[89]Fed. R. Civ. P. 54(c).

paid to purchase stock in Immunosyn Corporation: $10,000 for Plaintiff Elton[90] and $50,000 for Plaintiff Foster.[91]  Rather than pursue lost profits, Plaintiff Elton seeks a trebling of his damages pursuant to RICO.[92]  Since Plaintiff has suffered out-of-pocket losses in the amount of $10,000, he is entitled to recover total damages in the amount of $30,000.

Plaintiff Foster also asks for lost profits in the amount of $950,000.  Foster claims that Immunosyn stock traded for a price as high as five to six dollars per share, he purchased 200,000 shares, and Plaintiff was unable to sell for this amount due to Defendant's failure to deliver the shares to him.[93]  However, these facts are not supported by Plaintiffs' First Amended Complaint, which indicates that Foster made two separate purchases of 100,000 shares of stock at $25,000.[94]  While Plaintiff expressly states that he never received a stock certificate for the second purchase of Immunosyn shares, there is no mention of the Defendants' failure to deliver the first purchase of shares.[95]  Furthermore, Foster complains that he "lost profits on the second share certificate of at least $475,000 by not being [able] to sell the stock at the selling price of $5.00 per share which was

---

[90]First Amended Complaint, ¶¶ 60-61, 91, 113; *see* Motion for Entry of Final Judgment, p. 3.

[91]First Amended Complaint, ¶¶ 66-70, 100, 113; Motion for Entry of Final Judgment, p. 3.

[92]First Amended Complaint, ¶ 132; *see* Motion for Entry of Final Judgment, p. 5.

[93]*Id.* at 4.

[94]First Amended Complaint,  ¶¶ 67-70.

[95]"As [a] result of MCCLAIN, SR.'s failure to deliver his second share certificate to him for 100,000 shares of [Immunosyn], FOSTER was unable to sell the stock at a profit when the stock opened during August 2007."  *Id.* at ¶ 75.  "To date, MCCLAIN, SR. has failed to deliver to FOSTER shares from the second $25,000 purchase (100,000 shares) that occurred on or about March 2006."  *Id.* at ¶ 95.  "MCCLAIN, SR. breached his agreement to send FOSTER his stock for the second $25,000 purchase prior to the stock going public during August 2007."  *Id.* at ¶ 99.

maintained from August through about November 2007."[96]  However, this amount was calculated by taking the value of the stock and subtracting the purchase price.  The Court concludes that the appropriate measure for lost profits is the actual price of the stock.  Thus, Plaintiff Foster is entitled to lost profits of $500,000, which is the amount of profit that he lost due to his inability to sell the second 100,000 shares at five dollars per share.

In addition, Plaintiff Foster requests recovery of legal fees and costs under both the securities laws and RICO.[97]  The Fifth Circuit has outlined factors to consider in determining the appropriate amount to award for attorneys' fees.[98]  Most pertinent to the facts of this case are considerations of the time and labor required and the customary fee involved.[99]  Plaintiffs' attorney, Andrew J. Tine, provided an affidavit in which he swore that he expended well over eight (8) hours working on the case, and his normal hourly rate for this type of litigation is $250.  Tine also incurred a cost of $350 in filing the lawsuit.[100]  Hence, the claimed legal fees are appropriate in this case, and Plaintiff is entitled to recovery in the amount of $2,350.

## V. Conclusion

The Court hereby GRANTS Plaintiffs GARY G. ELTON and D. WILLIAM FOSTER's

---

[96] *Id.* at 76.

[97] *Id.* at ¶¶ 102, 132; *see* Motion for Entry of Final Judgment, p. 5.  "In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys's fees, against either party litigant."  15 U.S.C. § 78r; *see* 18 U.S.C. § 1964(c) (allowing recovery of reasonable attorneys' fees).

[98] *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

[99] *See id.* (listing the *Johnson* factors).

[100] Tine's Aff. ¶ 5.

motion for entry of default judgment against Defendants DOUGLAS A. MCCLAIN, SR., DOUGLAS A. MCCLAIN, JR., JAMES T. MICELI, IMMUNOSYN CORPORATION, AND PADMORE HOLDINGS, LTD. Plaintiff GARY G. ELTON is entitled to damages in the total amount of $30,000. Plaintiff D. WILLIAM FOSTER is entitled to damages in the total amount of $500,000. Plaintiff is further entitled to recovery of attorney fees in the amount of $2,350. The Court also finds that Defendant DEBRA A. MCCLAIN received a transfer in violation of the Uniform Fraudulent Transfer Act in the amount of $10,000 from Defendant DOUGLAS A. MCCLAIN, SR. Plaintiffs are awarded costs of court. If Plaintiffs wish to pursue these costs, Defendant shall file a Bill of Costs in the form prescribed by the Clerk within fourteen days of this Order.

It is so ORDERED.

SIGNED this 29th day of December, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

15